UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DONALD ARTHUR YAW and MARIETTA DIANNE YAW, Husband and Wife,<br><br>Plaintiffs,<br><br>v.<br><br>**AIR & LIQUID SYSTEMS CORPORATION**, individually and as successor-in- interest to BUFFALO PUMPS, INC.; **ARMSTRONG INTERNATIONAL, INC.**; **BNS CO.**, f/k/a BROWN & SHARPE MANUFACTURING COMPANY; **CBS CORPORATION**, f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT; **CRANE CO.**; **CROWN CORK & SEAL COMPANY, INC.**, sued as successor-in-interest to MUNDET CORK COMPANY; **FLOWSERVE US INC.**; **FOSTER WHEELER ENERGY CORPORATION**; **GARDNER-DENVER, INC.**; **GENERAL ELECTRIC COMPANY**; **GOULDS PUMPS, INC.**; **GRINNELL LLC**, d/b/a GRINNELL CORPORATION; **HONEYWELL INTERNATIONAL, INC.**, f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION; **IMO INDUSTRIES, INC.**, individually and as successor in interest to IMO DELAVAL; **INGERSOLL-** | No.<br><br>COMPLAINT FOR PERSONAL INJURY<br><br>JURY TRIAL DEMAND |

COMPLAINT FOR PERSONAL INJURY - 1

SCHROETER, GOLDMARK & BENDER
810 Third Avenue ● Suite 500 ● Seattle, WA  98104
Phone (206) 622-8000 ● Fax (206) 682-2305

**RAND COMPANY**; **METROPOLITAN LIFE INSURANCE COMPANY**; **VIKING PUMP, INC.**; **WARREN PUMPS, LLC**; **WEIR VALVES & CONTROLS USA, INC.**, individually and as successor in interest to ATWOOD & MORRILL CO., INC.; **WESTERN AUTO SUPPLY** d/b/a ADVANCE AUTO PARTS; and **THE WILLIAM POWELL COMPANY**,

Defendants.

## I.     CIVIL ACTION COMPLAINT

PLAINTIFFS, Donald Arthur Yaw and Marietta Dianne Yaw, husband and wife, sue the above-named Defendants for compensatory and punitive damages, by and through their attorneys, Schroeter, Goldmark, & Bender, PS, and hereby bring this Civil Action Complaint, and allege:

## II.     PARTIES

1. The Plaintiffs, Donald Arthur Yaw and Marietta Dianne Yaw ("Plaintiffs") are citizens of the State of Washington. Donald Arthur Yaw lives in Kitsap County, Washington, and was exposed to asbestos there throughout his life, from approximately from 1964 until 2001.

2. Defendant, AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in-interest to BUFFALO PUMPS, INC., was and is a company incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. At all times material hereto, AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in-interest to BUFFALO PUMPS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Buffalo Pumps. In addition, at all times material hereto, AIR & LIQUID SYSTEMS CORPORATION, individually and as

successor-in-interest to BUFFALO PUMPS, INC., manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of AIR & LIQUID SYSTEMS CORPORATION, individually and as successor-in-interest to BUFFALO PUMPS, INC.'s business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

3. Defendant, ARMSTRONG INTERNATIONAL, INC., was and is a company incorporated under the laws of the State of Michigan with its principal place of business in Michigan. At all times material hereto, ARMSTRONG INTERNATIONAL, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Armstrong International steam traps. In addition, at all times material hereto, ARMSTRONG INTERNATIONAL, INC. manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of ARMSTRONG INTERNATIONAL, INC.'s business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

4. Defendant, BNS CO., f/k/a BROWN & SHARPE MANUFACTURING COMPANY, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Rhode Island. At all times material hereto, BNS CO., f/k/a BROWN & SHARPE MANUFACTURING COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products,

materials, or equipment, including, but not limited to, asbestos containing Brown & Sharpe pumps. In addition, at all times material hereto, BNS CO., f/k/a BROWN & SHARPE MANUFACTURING COMPANY manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of BNS CO., f/k/a BROWN & SHARPE MANUFACTURING COMPANY's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

5. Defendant, CBS CORPORATION, f/k/a Viacom, Inc., sued as successor-by-merger to CBS Corporation f/k/a Westinghouse Electric Corporation and as successor-in-interest to BF Sturtevant was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, CBS CORPORATION, f/k/a Viacom, Inc., sued as successor-by-merger to CBS Corporation f/k/a Westinghouse Electric Corporation and as successor-in-interest to BF Sturtevant mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Westinghouse blowers, Westinghouse turbines, Westinghouse generators, and BF Sturtevant forced-draft blowers. In addition, at all times material hereto, CBS CORPORATION, f/k/a Viacom, Inc., sued as successor-by-merger to CBS Corporation f/k/a Westinghouse Electric Corporation and as successor-in-interest to BF Sturtevant manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of  CBS CORPORATION's, f/k/a Viacom, Inc.,

sued as successor-by-merger to CBS Corporation f/k/a Westinghouse Electric Corporation and as successor-in-interest to BF Sturtevant, business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

6. Defendant, CRANE CO. was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material hereto, CRANE CO., mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Cranite gaskets; Crane valves, feed tanks, pumps; Chapman valves; Cochrane pumps, feed tanks; Deming pumps and Jenkins valves. In addition, at all times material hereto, CRANE CO. manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of CRANE CO.'s business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

7. Defendant, CROWN CORK & SEAL COMPANY, INC., sued as successor-in-interest to MUNDET CORK CORPORATION, was and is a company incorporated under the laws of the State of Pennsylvania with its principal place of business in Pennsylvania. At all times material hereto, CROWN CORK & SEAL COMPANY, INC., sued as successor-in-interest to MUNDET CORK CORPORATION, and/or its predecessor(s) mined, manufactured, sold, distributed, and supplied asbestos-containing Mundet block, insulation, cement and pipe covering. In addition, at all times material hereto, CROWN CORK & SEAL COMPANY, INC., sued as successor-in-interest to MUNDET CORK CORPORATION and/or its predecessor(s) manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials,

or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of CROWN CORK & SEAL COMPANY, INC., sued as successor-in-interest to MUNDET CORK CORPORATION's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

8. Defendant, FLOWSERVE US INC. was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Texas. At all times material hereto, FLOWSERVE US INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Edward valves. In addition, at all times material hereto, FLOWSERVE US INC. manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of FLOWSERVE US INC.'s business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

9. Defendant, FOSTER WHEELER ENERGY CORPORATION was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, FOSTER WHEELER ENERGY CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Foster Wheeler boilers and distilling plants. In addition, at all times material hereto, FOSTER WHEELER ENERGY CORPORATION manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or

retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of FOSTER WHEELER ENERGY CORPORATION's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

10. Defendant, GARDNER-DENVER, INC. was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Wisconsin. At all times material hereto, GARDNER-DENVER, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Gardner-Denver pumps and compressors. In addition, at all times material hereto, GARDNER-DENVER, INC. manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of GARDNER-DENVER, INC.'s business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

11. Defendant, GENERAL ELECTRIC COMPANY was and is a company incorporated under the laws of the State of New York with its principal place of business in Connecticut. At all times material hereto, GENERAL ELECTRIC COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing General Electric turbines and generators. In addition, at all times material hereto, GENERAL ELECTRIC COMPANY manufactured, processed, imported, converted, compounded,

supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of GENERAL ELECTRIC COMPANY's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

12. Defendant, GOULDS PUMPS, INC. was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, GOULDS PUMPS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Goulds pumps. In addition, at all times material hereto, GOULDS PUMPS, INC. manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of GOULDS PUMPS, INC.'s business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

13. Defendant, GRINNELL LLC, d/b/a GRINNELL CORPORATION was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Massachusetts. Upon information and belief, GRINNELL LLC, d/b/a GRINNELL CORPORATION's single member is Tyco International Management Control, a resident of Princeton, New Jersey. At all times material hereto, GRINNELL LLC, d/b/a GRINNELL CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Grinnell valves, boilers and

heaters. In addition, at all times material hereto, GRINNELL LLC, d/b/a GRINNELL CORPORATION manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of GRINNELL LLC, d/b/a GRINNELL CORPORATION's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

14. Defendant, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Bendix brakes. In addition, at all times material hereto, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

15. Defendant, IMO INDUSTRIES, INC., individually and as successor in interest to IMO DELAVAL, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, IMO INDUSTRIES, INC., individually and as successor in interest to IMO DELAVAL mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing DeLaval pumps and turbines, and C.H. Wheeler air ejectors. In addition, at all times material hereto, IMO INDUSTRIES, INC., individually and as successor in interest to IMO DELAVAL, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of IMO INDUSTRIES, INC., individually and as successor in interest to IMO DELAVAL's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

16. Defendant, INGERSOLL-RAND COMPANY was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in North Carolina. At all times material hereto, INGERSOLL-RAND COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, manufacturer of machinery and equipment, including asbestos-containing Ingersoll-Rand pumps and compressors. In addition, at all times material hereto, INGERSOLL-RAND COMPANY manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate,

for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of INGERSOLL-RAND COMPANY's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

17. Defendant, METROPOLITAN LIFE INSURANCE COMPANY, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. METROPOLITAN LIFE INSURANCE COMPANY is named as a conspiracy defendant.  Metropolitan Life began as early as the 1920s to finance studies through McGill University in Montreal regarding the connection between asbestos exposure and asbestosis and then acted in concert with the Johns-Manville Company to suppress the dissemination of information about the hazards of asbestos to the public and users of Johns-Manville Company's asbestos-containing products. Plaintiffs' claims arise out of METROPOLITAN LIFE INSURANCE COMPANY's business activities and/or tortious conduct that caused injury within the State of Washington causing injury to Plaintiff.

18. Defendant, VIKING PUMP, INC. was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Iowa.  At all times material hereto, VIKING PUMP, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Viking pumps.  In addition, at all times material hereto, VIKING PUMP, INC. manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of VIKING PUMP, INC.'s business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

19. Defendant, WARREN PUMPS LLC was and is a limited liability company incorporated under the laws of the State of Delaware with its principal place of business in Massachusetts. Upon information and belief, WARREN PUMPS LLC's single member is domiciled in Delaware. At all times material hereto, WARREN PUMPS LLC mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, manufacturer of Warren pumps, machinery and/or equipment. In addition, at all times material hereto, WARREN PUMPS, LLC manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of WARREN PUMPS LLC's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

20. Defendant, WEIR VALVE & CONTROLS USA, INC., individually and as successor-in-interest to ATWOOD & MORRILL CO., INC., was and is a company incorporated under the laws of the State of Massachusetts with its principal place of business in Massachusetts. At all times material hereto, WEIR VALVE & CONTROLS USA, INC., individually and as successor-in-interest to ATWOOD & MORRILL CO., INC., mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, supply of Atwood & Morrill valves. In addition, at all times material hereto, WEIR VALVE & CONTROLS USA, INC., individually and as successor-in-interest to ATWOOD & MORRILL CO., INC., manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in

order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of WEIR VALVE & CONTROLS USA, INC., individually and as successor-in-interest to ATWOOD & MORRILL CO., INC.'s business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

21. Defendant, WESTERN AUTO SUPPLY d/b/a ADVANCE AUTO PARTS was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Virginia. At all times material hereto, WESTERN AUTO SUPPLY d/b/a ADVANCE AUTO PARTS mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing automotive parts. In addition, at all times material hereto, WESTERN AUTO SUPPLY d/b/a ADVANCE AUTO PARTS manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of WESTERN AUTO SUPPLY d/b/a ADVANCE AUTO PARTS's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

22. Defendant, THE WILLIAM POWELL COMPANY was and is a company incorporated under the laws of the State of Ohio with its principal place of business in Ohio. At all times material hereto, THE WILLIAM POWELL COMPANY mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Powell valves. In addition, at all times material hereto, THE WILLIAM POWELL COMPANY manufactured,

processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiffs' claims arise out of THE WILLIAM POWELL COMPANY's business activities and/or tortious conduct within the State of Washington causing injury to Plaintiff.

### III.    JURISDICTION

23. This Court has personal jurisdiction over the Defendants because Defendants have a substantial connection to the State of Washington and have purposefully availed themselves of the privilege of conducting business in this state. Plaintiffs' claims arise out of Defendants' business activities conducted within this state and/or directed at this state, including the use and servicing of asbestos products that Defendants supplied within and to this state.

24. With regard to all Defendants who are foreign corporations, Plaintiffs' claims arise from Defendants' transaction of business within this state and/or commission of a tortious act within this state, which subjects Defendants to the jurisdiction of the Washington courts pursuant to the Washington Long-Arm Statute and the United States Constitution.

25. Plaintiffs' claims against Defendants arise out of Defendants' efforts to serve directly or indirectly the market for their asbestos products in this state, either through direct sales or through utilizing an established distribution channel with the expectation that their products would be purchased and/or used within Washington.

26. At all material times, with the exception of Metropolitan Life Insurance Company, each Defendant corporation used, mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, incorporated into their product design, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment which were sold, distributed, and used in Washington. In

addition, at all times material hereto, the Defendants manufactured, processed, imported, converted, compounded, supplied, installed replaced, repaired, used, and/or retailed products, materials, or equipment that required asbestos in order to operate, for which concurrent use of asbestos was specified, or for which it was known asbestos would be used concurrently. Plaintiff, while working at various jobs, was exposed to various asbestos-containing products listed in paragraphs 2 through 22, for which asbestos exposure the Defendants are jointly & severally liable.

27. This Court has original jurisdiction pursuant to 28 U.S.C. §1332, because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

28. Pursuant to 28 U.S.C.A. §1391(b)(2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in Kitsap County, Washington.

IV.   FACTUAL BACKGROUND

29. For Plaintiff Donald Arthur Yaw:

A. Date of Birth: February  .

B. Plaintiff Donald Arthur Yaw worked as an apprentice, shipfitter, and structural planner and estimator. From approximately 1964 to 1968, Plaintiff Donald Arthur Yaw worked as an apprentice at Puget Sound Naval Shipyard in Bremerton, WA. From approximately 1968 to 1980, Plaintiff Donald Arthur Yaw worked as a shipfitter at Puget Sound Naval Shipyard in Bremerton, WA. From approximately 1980 to 2001, Plaintiff Donald Arthur Yaw continued to work at Puget Sound Naval Shipyard as a structural planner and estimator.

C. In addition to his work at Puget Sound Naval Shipyard, Plaintiff Donald Arthur yaw performed automotive repair work on his personal vehicles and those of his family.

D.	Plaintiffs hereby incorporate paragraphs 1 – 22. During the activities referenced above, Plaintiff Donald Arthur Yaw was exposed to the asbestos-containing products, and products manufactured for foreseeable use with asbestos products, and products manufactured, used, and/or sold by every named defendant in this lawsuit, except Metropolitan Life Insurance Company.

E.	Plaintiff Donald Arthur Yaw believes he has been exposed to the asbestos-containing products, and products manufactured for foreseeable use with asbestos products, of every named defendant in this lawsuit, except Metropolitan Life Insurance Company.

F.	As a result of this exposure, Plaintiff Donald Arthur Yaw has developed an asbestos-related disease, specifically mesothelioma. He was diagnosed with mesothelioma on or around March 26, 2018.

V.	LIABILITY AND RELIEF

30.	Defendants, are foreign corporations who, at all relevant times, have done business in the State of Washington.

31.	Each Defendant corporation or its predecessor-in-interest, with the exception of Metropolitan Life Insurance Company, manufactured and/or put asbestos and asbestos-containing products, and products manufactured for foreseeable use with asbestos products, into the stream of commerce and/or used asbestos containing material at work sites where Plaintiff Donald Arthur Yaw worked.

32.	Plaintiffs claim liability based upon the theories of product liability, including, but not limited to negligence, strict product liability (for example, Restatement (Second) of Torts § 402A and/or 402B), conspiracy, premises liability, the former RCW 49.16.030, and any other applicable theory of liability, including, if applicable, RCW 7.72 et seq.

33.	The manufacturer/distributor defendants identified above are liable for, among other things, the following conduct:  negligent and unsafe design; failure to inspect, test,

warn, instruct, monitor and/or recall; failure to substitute safe products; marketing products not reasonably safe as manufactured; marketing products not reasonably safe as designed; and marketing products not reasonably safe for lack of adequate warnings.

34. Certain Defendants engaged in concerted, and/or conspiratorial activities or omissions which prevented adequate warnings concerning the hazards of asbestos and asbestos-containing products from being provided to those using or exposed to asbestos and asbestos-containing products. These activities also resulted in the manufacture and distribution of products that were not reasonably safe as designed. In this connection, Plaintiffs have sued Metropolitan Life Insurance Company in its capacity as a conspirator based on concert of action.

35. These actions or omissions of Defendants, and each of them, proximately caused severe personal injury and other damages to Plaintiffs.

## VI.   DAMAGES

36. Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

37. As a result of the development of asbestos-related diseases, Plaintiff Donald Arthur Yaw has suffered and sustained very serious injuries to his person, to wit: mesothelioma.

38. Plaintiff Donald Arthur Yaw has further suffered pain, nervousness, and mental anguish as a direct result of the aforesaid injuries.

39. Plaintiff Donald Arthur Yaw verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; and further, that his expected life span has been greatly shortened.

40. Plaintiff Donald Arthur Yaw alleges that as a result of the aforesaid illnesses, he has been forced to incur medical expenses by way of doctor and drug bills and verily

believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

41. Plaintiff Marietta Dianne Yaw has suffered and will suffer damages for loss of companionship, services, and consortium.

42. Plaintiffs' children have also suffered and will suffer damages for loss of love, care and companionship.

43. WHEREFORE, the Plaintiff Donald Arthur Yaw verily believes he is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

44. WHEREFORE, Plaintiffs pray for judgment against the Defendants and each of them as follows:

    A. Award the Plaintiffs compensatory damages, in an amount to be determined at trial;

    B. Award the Plaintiffs punitive damages, if applicable;

    C. Award the Plaintiffs pre-judgment and post-judgment interest and any other costs, expenses or fees to which the Plaintiff may be entitled by law; and

    D. Award the Plaintiffs such other and further relief as is just and proper.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THESE ISSUES.**

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

DATED this 21st day of May, 2018.

SCHROETER, GOLDMARK & BENDER

*s/ Thomas J. Breen*
*s/ Lucas Garrett*
*s/ Elizabeth J. McLafferty*
THOMAS J. BREEN, WSBA #34574
LUCAS GARRETT, WSBA #38452
ELIZABETH J. McLAFFERTY, WSBA #45291
810 Third Avenue, Suite 500
Seattle, WA  98104
Phone:  (206) 622-8000
Fax:  (206) 682-2305
Email:  SGBasbestos@sgb-law.com;
breen@sgb-law.com; garrett@sgb-law.com;
mclafferty@sgb-law.com
*Counsel for Plaintiffs*