UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIETTA DIANNE YAW, Individually and as Executor of the Estate of DONALD ARTHUR YAW<br><br>Plaintiff,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>Defendants. | CASE NO. C18-5405 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendants General Electric Company ("General Electric"), CBS Corporation ("Westinghouse"), and Foster Wheeler Energy Corporation's ("Foster Wheeler") ("Defendants") motion for summary judgment. Dkt. 95. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

# I. PROCEDURAL HISTORY

On May 21, 2018, Plaintiffs Donald and Marietta Yaw ("the Yaws") filed a complaint against numerous defendants alleging injuries to Mr. Yaw resulting from exposure to asbestos. Dkt. 1.

On January 31, 2019, Defendants filed a motion for summary judgment arguing in part that the Yaws had no evidence to support their claims against Defendants. Dkt. 95. On February 19, 2019, the Yaws responded to Defendants' motion and requested a continuance because they were missing facts essential to justify their opposition. Dkt. 106. On February 22, 2019, Defendants replied. Dkt. 111. On March 18, 2019, the Yaws filed a supplemental response and submitted the expert reports of Dr. John Maddux and Captain Arnold Moore ("Moore"). Dkts. 132, 133-1.

On March 21, 2019, the Yaws filed a motion to amend their complaint informing the Court that Mr. Yaw passed away. Dkt. 140.

On March 22, 2019, Defendants filed a surreply requesting that the Court strike the Yaws' supplemental response and expert reports.[1] Dkt. 144.

On April 18, 2019, the Court granted the Yaws' motion to amend, granted the Yaws' request for a continuance of the summary judgment motions, and requested additional briefing in light of the Supreme Court's decision in *Air & Liquid Systems Corp. v. DeVries*, 139 S. Ct. 986, 994 (2019) ("*DeVries*"). Dkt. 154.

---

[1] The Court denies the motion to strike because Defendants are not prejudiced if the Court considers the evidence.

On April 26, 2019, Marietta Yaw, individually and as personal representative of the Estate of Donald Yaw, (hereinafter "Yaw") filed her amended complaint. Dkt. 155. Yaw's claims are as follows:

> Plaintiff claims liability based upon the theories of product liability, including, but not limited to negligence, strict product liability (for example, Restatement (Second) of Torts § 402A and/or 402B), conspiracy, premises liability, the former RCW 49.16.030, and any other applicable theory of liability, including, if applicable, RCW 7.72 et seq.
> The manufacturer/distributor defendants identified above are liable for, among other things, the following conduct: negligent and unsafe design; failure to inspect, test, warn, instruct, monitor and/or recall; failure to substitute safe products; marketing products not reasonably safe as manufactured; marketing products not reasonably safe as designed; and marketing products not reasonably safe for lack of adequate warnings.
> Certain Defendants engaged in concerted, and/or conspiratorial activities or omissions which prevented adequate warnings concerning the hazards of asbestos and asbestos-containing products from being provided to those using or exposed to asbestos and asbestos-containing products. These activities also resulted in the manufacture and distribution of products that were not reasonably safe as designed.

*Id.* ¶¶ 31–33.

On May 2, 2019, Defendants filed a supplemental brief in support of their motion for summary judgment. Dkt. 164. On May 20, 2019, Yaw responded. Dkt. 173. On May 24, 2019, Defendants replied. Dkt. 176.

## II. FACTUAL BACKGROUND

The majority of the relevant facts in this matter are undisputed. Mr. Yaw worked at the Puget Sound Naval Shipyard ("PSNSY") from 1964 through 2001. During the first part of his career, Mr. Yaw was a shipfitter, which Mr. Yaw describes as a steelworker who actually builds the ships. Mr. Yaw recalled working on numerous ships including the USS Simon Lake, USS Kitty Hawk, USS Cusk, USS Seattle, USS Ranger, USS

Sacramento, USS John Adams, USS Constellation, USS Enterprise, USS Truxton, USS Bainbridge, and USS Ulysses S. Grant. It is undisputed that, at some point, some of these ships were equipped with products that either included parts with asbestos such as gaskets and seals or required additional parts with asbestos such as insulation. The problem, however, is that Mr. Yaw failed to remember working on any particular product on any particular ship. *See* Dkt. 95 at 3 (summarizing Yaw deposition). Yaw attempts to overcome this failure by citing Mr. Yaw's deposition stating that he was in engine rooms and boiler rooms that were dusty. Dkt. 106 at 3–4. Then Yaw leaps to certain conclusions as follows: "If asbestos-insulated turbines manufactured by General Electric were installed on ships Mr. Yaw worked on as a ship fitter, then he was exposed to asbestos from work performed on General Electric turbines. Similarly, Mr. Yaw was exposed to asbestos from Westinghouse turbines if any asbestos-insulated Westinghouse turbines were installed on ships he worked on as a ship fitter. . . . If Mr. Yaw worked on ships installed with asbestos-insulated Foster Wheeler boilers, then he was exposed to asbestos from Foster Wheeler boilers." *Id.* at 5–6.

Yaw also submitted expert reports. Dkt. 133-1. Moore is an expert in maintenance and work practices aboard Navy ships. *Id.* at 4. He opines that (1) "Mr. Yaw worked in spaces where other workers were removing asbestos insulation from 1964 until 1978. He likely worked in spaces where other workers were removing and replacing asbestos packing and gaskets for the entire time he worked as a shipfitter from 1964 through 1980," *id*. at 8, and that (2) "it is more likely than not that the pumps, valves and other machinery and equipment installed on the ships upon which Mr. Yaw worked as a

shipfitter contained asbestos packing and gaskets. It is likely he worked as a shipfitter in spaces where asbestos insulation was being removed until 1978," *id*. at 47. Regarding Moore's first opinion, he seems to state as a matter of fact that "Mr. Yaw worked in spaces where other workers were removing asbestos insulation from 1964 until 1978." Yet, Moore fails to provide any citation to Mr. Yaw's deposition to support this assertion or opinion. Moreover, in his deposition, Moore testified as follows:

> In reading Mr. Yaw's deposition testimony, he did not testify that he was in specific spaces in the specific ships on which he worked while specific equipment manufacturers' equipment was being worked on those spaces. That deposition -- that information simply does not exist in the deposition based on my recollection of his deposition testimony.

Dkt. 171-1 at 15.

### III. DISCUSSION

**A.     Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt").

*See also* Fed. R. Civ. P. 56(e).  Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases.  *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630.  The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party.  The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim.  *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255).  Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed.  *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**B.     Defendants' Motion**

In their original motion, Defendants moved for summary judgment for three reasons as follows: (1) Yaw fails to submit evidence to establish that he was exposed to asbestos from a product manufactured by Defendants, (2) assuming that Yaw submits evidence that he worked with or around a product manufactured by Defendants, the record is devoid of evidence that Defendants manufactured the insulation or any other

asbestos product that was purportedly used in conjunction that product, and (3) Yaw is unable to establish causation because Mr. Yaw testified that he knew he was working in dangerous dusty conditions and failed to take adequate measures to safeguard his health. Dkt. 95. Yaw responded that (1) Defendants are still liable for failure to warn even if they provided "bare metal" equipment to the Navy, (2) questions of fact exist regarding Mr. Yaw's decisions regarding the use of safety equipment, and (3) the Court should grant a continuance until Yaw submits expert reports regarding Mr. Yaw's actual exposure to relevant products. Dkt. 106. While it appears that Yaw is correct as to the issues of Defendants providing warnings and Mr. Yaw's stated refusal to use adequate precautions, the first issue Defendants present is dispositive.

In a product liability action, any claim requires exposure to the product. For example, on a general maritime negligence claim the plaintiff must show that "he was actually exposed to asbestos-containing materials . . . and that such exposure was a substantial contributing factor in causing his injuries." *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170, 1174 (9th Cir. 2016) (citing *Lindstrom v. A–C Prod. Liab. Tr.*, 424 F.3d 488, 492 (6th Cir. 2005) *abrogated on other grounds by DeVries*). Similarly, in Washington "the plaintiff must establish a reasonable connection between the injury, the product causing the injury, and the manufacturer of that product. In order to have a cause of action, the plaintiff must identify the particular manufacturer of the product that caused

the injury." *Lockwood v. AC & S, Inc.*, 109 Wn.2d 235, 245–47 (1987) (quoting *Martin v. Abbott Laboratories*, 102 Wn.2d 581, 590 (1984)).[2]

In this case, Yaw fails to submit evidence to establish any connection between Defendants' products and Mr. Yaw injuries. At most, Yaw submits evidence to establish that sometimes he was in engine and boiler rooms that contained dust. This is the extent of the relevant evidence on the issue of exposure that has been presented by a fact witness. In other words, Yaw fails to identify a specific time that he was on a particular ship and exposed to a particular product that had produced or was producing asbestos dust. Due to this lack of factual evidence, Yaw is forced to rely on reasonable inferences. *See Scott v. Harris*, 550 U.S. 372, 378 (2007) ("courts are required to view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion.'") (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). Yaw, however, fails to advance any reasonable inference. Instead, she relies on mere speculation that is devoid of any attachment to a fact. For example, she asserts that "[i]f asbestos-insulated turbines manufactured by General Electric were installed on ships Mr. Yaw worked on as a ship fitter, then he was exposed to asbestos from work performed on General Electric turbines." Dkt. 106 at 5. Even if this assertion were true, it would require a prerequisite fact that Mr. Yaw was on a ship near a General Electric turbine. Unfortunately, that fact does not exist in this record. Thus, Yaw fails to

---

[2] The Court cites both federal maritime law and Washington state law because Yaw's claims are extremely vague. Yaw, however, appears to implicitly accept that her claims may only be brought under these two bodies of law because she does not challenge Defendants' arguments under or citations to these laws.

establish even minimal exposure to asbestos yet alone exposure to one of Defendants' products that contained asbestos. *McIndoe*, 817 F.3d at 1176 ("Evidence of only minimal exposure to asbestos is insufficient" to establish causation); *Lindstrom*, 424 F.3d at 492 ("a mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient.").

Moore's report fares no better in establishing causation. While he states that "Mr. Yaw worked in spaces where other workers were removing asbestos insulation from 1964 until 1978," neither Moore nor Yaw can establish the factual underpinnings of this statement. In fact, Moore testified that Mr. Yaw failed to identify working on a specific location on a specific ship. Dkt. 171-1 at 15 ("that information simply does not exist in [Mr. Yaw's] deposition"). If the fact witness is unable to establish his location, then an expert opinion based on nothing more than that fact witness's testimony is also insufficient to establish the witness's proximity to a particular product. Thus, Moore's opinion that Mr. Yaw was exposed to asbestos from Defendants' products is based on nothing more than speculation that a person who worked on ships at PSNSY *must* have been exposed to some asbestos. It is questionable whether this opinion is even admissible under the rules of evidence because it lacks adequate factual support from the materials and information reviewed to form the opinion. Regardless, the Court finds that Moore's opinion fails to fill the gap in Mr. Yaw's failure to identify any specific exposure to Defendants' products. Accordingly, Defendants are entitled to summary judgment because Yaw fails to establish a genuine issue of fact on the issue of causation.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that Defendants' motion for summary judgment, Dkt. 95, is **GRANTED**.

Dated this 2nd day of August, 2019.

BENJAMIN H. SETTLE
United States District Judge