UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARIETTA DIANNE YAW, Individually and as Executor of the Estate of DONALD ARTHUR YAW,<br><br>Plaintiff,<br><br>v.<br><br>AIR & LIQUID SYSTEMS CORPORATION, et al.,<br><br>Defendants. | CASE NO. C18-5405 BHS<br><br>ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT, RESERVING RULINGS ON PLAINTIFF'S AND DEFENDANT'S MOTIONS, AND REQUESTING STATUS REPORT |

This matter comes before the Court on Warren Pumps, LLC's ("Warren Pumps") motion for summary judgment, Dkt. 113; Defendant Air & Liquid Systems Corporation's ("ALS") motion for summary judgment, Dkt. 205; Defendant Armstrong International, Inc.'s ("Armstrong") motion for summary judgment, Dkt. 210; Defendant Ingersoll-Rand Company's ("Ingersol-Rand") motion for summary judgment; Dkt. 211; and Plaintiff Marietta Yaw's ("Yaw") motions for partial summary judgment on Warren Pumps, ALS, Armstrong, Ingersol-Rand, and Defendant Crane Co's ("Crane") affirmative defenses, Dkts. 192, 194, 198, 204, 208. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

## I. PROCEDURAL HISTORY

On May 21, 2018, Plaintiffs Donald and Marietta Yaw ("the Yaws") filed a complaint against numerous defendants alleging injuries to Mr. Yaw resulting from exposure to asbestos. Dkt. 1.

On February 25, 2019, Warren Pumps filed a motion for summary judgment arguing that maritime law applies and that the Yaws had no evidence to support their claims. Dkt. 113. On March 18, 2019, the Yaws responded. Dkt. 134. On March 22, 2019, Warren Pumps replied. Dkt. 142.

On March 21, 2019, the Yaws filed a motion to amend their complaint informing the Court that Mr. Yaw passed away. Dkt. 140. On April 18, 2019, the Court granted the Yaws' motion. Dkt. 154.

On May 30, 2019, the Court renoted Warren Pumps' motion for consideration on the Court's June 21, 2019 calendar. Dkt. 180.

On June 12, 2019, Yaw filed her motions for partial summary judgment on the five remaining defendants' affirmative defenses, Dkts. 192, 194, 198, 204, 208, and numerous defendants filed motions for summary judgment on Yaw's claims, Dkts. 205, 210, 211. On July 1, 2019, some parties responded. Dkts. 218, 220, 222, 224, 226, 229, 231, 234. On July 5, 2019, some parties replied. Dkts. 235, 237, 239.

## II. FACTUAL BACKGROUND

The majority of the relevant facts in this matter are undisputed. Mr. Yaw worked at the Puget Sound Naval Shipyard ("PSNSY") from 1964 through 2001. During the first part of his career, Mr. Yaw was a shipfitter, which Mr. Yaw describes as a steelworker

who actually builds the ships. Mr. Yaw recalled working on numerous ships including the USS Simon Lake, USS Kitty Hawk, USS Cusk, USS Seattle, USS Ranger, USS Sacramento, USS John Adams, USS Constellation, USS Enterprise, USS Truxton, USS Bainbridge, and USS Ulysses S. Grant. It is undisputed that, at some point, some of these ships were equipped with products that either included parts with asbestos such as gaskets and seals or required additional parts with asbestos such as insulation. The problem, however, is that Mr. Yaw failed to remember working on any particular product on any particular ship. *See* Dkt. 113 at 2–3 (summarizing Yaw deposition).

Yaw attempts to overcome this failure by selectively citing portions of Mr. Yaw's deposition and relying on the declaration of his expert, Captain Arnold Moore ("Moore"). Mr. Yaw stated in his deposition that he was in engine rooms and boiler rooms that were dusty. Dkt. 134 at 3–4. Moore then opines that "Mr. Yaw worked in spaces where other workers were removing asbestos insulation from 1964 until 1978. He likely worked in spaces where other workers were removing and replacing asbestos packing and gaskets for the entire time he worked as a shipfitter from 1964 through 1980." Dkt. 135-1 at 65.

### III. DISCUSSION

**A.     Maritime Law**

Warren Pumps argues that maritime law applies because "at least some portion of [Mr. Yaw's] alleged exposures took place aboard Naval vessels on navigable waters or in drydock . . . ." Dkt. 113 at 4. The party seeking to invoke such jurisdiction bears the burden to establish that it applies. *Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 534 (1995). To satisfy this burden, the moving party must plead

allegations or submit evidence to meet the requirements of (1) the locality test and (2) the connection test. *Id.*

In this case, Warren Pumps has submitted sufficient evidence to meet its burden on this issue. First, Yaw does not contest Warren Pump's argument. Instead, Yaw argues that her evidence "is sufficient to raise issues of fact with regard to causation under any asbestos causation standard, including that supposedly applied in maritime law under *Lindstrom v. A-C Product Liability Trust*, 424 F.3d 488 (6th Cir. 2005) [*abrogated on other grounds by Air & Liquid Sys. Corp. v. DeVries*, 139 S. Ct. 986 (2019)] and *McIndoe v. Huntington Ingalls Inc.*, 817 F.3d 1170 (9th Cir. 2016)." It is unclear what "supposedly applied in maritime law" means because this standard is a well-settled issue of law. To the extent Yaw argues that some other causation standard applies under maritime law, the argument is rejected. Turning to the remaining merits of Warren Pumps' argument, Yaw provides no substantive response.

Under the locality test, maritime law applies if "the tort occurred on navigable water or [if] the injury suffered on land was caused by a vessel on navigable water." *Grubart*, 513 U.S. at 534. "[I]t is well-settled that vessels in dry dock are still considered to be on navigable waters for purposes of admiralty jurisdiction." *Cabasug v. Crane Co.*, 956 F. Supp. 2d 1178, 1187 (D. Haw. 2013). The evidence in the record establishes that Mr. Yaw's alleged exposure occurred aboard dozens of Navy vessels at PSNSY. Thus, Warren Pumps has met the locality test.

The connection test involves a two-part analysis and is met if (1) the incident has a potentially disruptive impact on maritime commerce and (2) the general character of the

activity giving rise to the incident shows a substantial relationship to traditional maritime activity. *Sisson v. Ruby*, 497 U.S. 358, 370–72 (1990); *Grubart*, 513 U.S. at 534. The Ninth Circuit has "taken an inclusive view of what general features of an incident have a potentially disruptive effect on maritime commerce." *In re Mission Bay Jet Sports, LLC*, 570 F.3d 1124, 1128 (9th Cir. 2009).

In this case, Warren Pumps has established that repair of naval vessels impacts maritime commerce and has a traditional relationship to maritime activity. Therefore, the Court grants Warren Pumps' motion on this issue and concludes that maritime law applies to Yaw's claims.

**B.     Summary Judgment**

The remaining defendants all move for summary judgment on the issue of causation. Dkts. 113 at 5–8; 205 at 7–9; 211 at 7–10. While questions of fact may exist on the other issues in this case, the Court finds that Yaw's failure to submit sufficient evidence of causation is dispositive.

**1.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole,

could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial—e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89 (1990).

**2.     Defendants' Motions**

To establish her claims, Yaw "must be able to show both that [Mr. Yaw] was actually exposed to asbestos-containing materials that were installed by the shipbuilders

and that such exposure was a substantial contributing factor in causing his injuries." *McIndoe*, 817 F.3d at 1174 (citing *Lindstrom*, 424 F.3d at 492). A "mere showing that defendant's product was present somewhere at plaintiff's place of work is insufficient" to establish causation. *Lindstrom*, 424 F.3d at 492. Likewise, "[e]vidence of only minimal exposure to asbestos is insufficient" to establish causation. *McIndoe*, 817 F.3d at 1176.

In this case, Yaw fails to create a genuine dispute of material fact as to causation. Regarding fact witnesses, Mr. Yaw testified only generally about his work at the PSNSY. At most, Yaw submits evidence to establish that sometimes Mr. Yaw was in engine and boiler rooms that contained dust. Dkt. 134 at 2–5. She fails to identify any particular product that created the dust or whether other workers were working on a particular product creating dust. In other words, Yaw fails to identify a specific time that Mr. Yaw was on a particular ship and exposed to a particular product that had produced or was producing asbestos dust. Yaw attempts to fill this important gap with the testimony of her expert, Moore. Specifically, Moore opines that "Mr. Yaw worked in spaces where other workers were removing asbestos insulation from 1964 until 1978. He likely worked in spaces where other workers were removing and replacing asbestos packing and gaskets for the entire time he worked as a shipfitter from 1964 through 1980." Dkt. 135-1 at 65. Moore, however, fails to identify the basis for his factual assertion that Mr. Yaw worked around asbestos insulation removal or replacement. In short, Moore utterly fails to connect Mr. Yaw's presence at any specific time to any specific defendant's product or activity. With an insufficient factual basis for the opinion, Moore's report is nothing more than evidence establishing the mere presence of defendants' products at Mr. Yaw's

workplace, the PSNSY. Mere presence evidence is insufficient to establish exposure mush less substantial exposure. *McIndoe*, 817 F.3d at 1176. Therefore, the Court grants Warren Pumps, ALS, and Ingersoll-Rand's motions for summary judgment, Dkts. 113, 205, 211.

### 3. Yaw's Motions

Yaw moves for partial summary judgment on Warren Pumps, ALS, and Ingersoll-Rand's affirmative defenses. Dkts. 192, 204, 208. The Court denies these motions as moot because the Court dismisses Yaw's claims against these defendants.

## C. Status Report

Although it appears that Armstrong and Crane are the remaining defendants, the docket reflects that they may no longer be participating in this matter. Yaw did not respond to Armstrong's motion for summary judgment, Dkt. 210, and Armstrong and Crane did not respond to Yaw's motions for partial summary judgment, Dkts. 194, 198. Moreover, in the parties' recent stipulation, Armstrong and Crane did not participate. Dkt. 264. Therefore, the Court requests a status report as to Armstrong and Crane.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Warren Pumps, ALS, and Ingersoll-Rand's motions for summary judgment, Dkts. 113, 205, 211, are **GRANTED** and Yaw's motions for partial summary judgment, Dkts. 192, 204, 208, are **DENIED as moot**. The Clerk shall terminate Warren Pumps, ALS, and Ingersoll-Rand.

1 | The Court **RESERVES** ruling on the motions involving Armstrong and Crane, Dkts. 194, 198, 210, and requests a status report whether these defendants are still involved in this matter. The status report shall be filed no later than August 23, 2019.

Dated this 19th day of August, 2019.

BENJAMIN H. SETTLE
United States District Judge